# Illinois Official Reports

## Appellate Court

---

**In re Angel P., 2014 IL App (1st) 121749**

---

| | |
|---|---|
| Appellate Court Caption | *In re* ANGEL P., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Angel P., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-12-1749 |
| Filed<br>Rehearing denied | June 27, 2014<br>August 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from an adjudication that respondent was a delinquent minor and his commitment to the Department of Juvenile Justice, the appellate court had jurisdiction, even though the notice of appeal was filed before a ruling on respondent's motion to reconsider his sentence and where the notice of appeal was filed within 30 days of the denial of respondent's oral posttrial motion, the failure to hold a hearing on whether the arresting officer's testimony that respondent was 17 years old at the time of the offense was not error where his age was not a factor in determining probable cause, the finding that respondent was guilty of possessing a firearm while not on his own land or in his own abode was directed to be vacated on remand under *Aguilar*, and where the adjudications on multiple counts based on his possession of a pistol violated the one-act, one-crime doctrine, only the most serious of the offenses based on possession of a pistol could stand and the rest must be vacated on remand, and on remand, the trial court was directed to address the alleged errors in his social history and determine a new disposition. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-DJ-00368; the Hon. Stuart Lubin, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

Counsel on
Appeal

Clifford M. Nellis, of Lawndale Christian Legal Center, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Veronica Calderon Malavia, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HALL delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    The respondent, Angel P., appeals from orders of the circuit court of Cook County adjudicating him a delinquent minor and committing him to the Department of Juvenile Justice.[1] On appeal, the respondent contends that: (1) the denial of his motion to dismiss the delinquency petition was error; (2) the denial of his request for an evidentiary hearing on his motion to dismiss was error; (3) the denial of his motion to dismiss the indictment with prejudice without an evidentiary hearing was error; (4) the State failed to prove him guilty beyond a reasonable doubt that he had possession of a firearm; (5) the State failed to prove him guilty beyond a reasonable doubt of possessing a defaced firearm; (6) the trial court violated the one-act, one-crime doctrine; (7) the trial court erred when it proceeded with the disposition hearing although the social investigation report was tendered untimely; and (8) the trial court erred when it failed to sentence the respondent to the least restrictive alternative sentencing disposition. In response, the State maintains that this court lacks jurisdiction over the respondent's appeal.

¶ 2                                    BACKGROUND

¶ 3    On November 21, 2011, the respondent was arrested after a police officer witnessed him place a weapon under a vehicle. According to the arresting officer, Chicago police officer Dalcason, the respondent gave his date of birth as September 4, 1994, making the respondent 17 years old at the time of the arrest.

¶ 4    On December 7, 2011, Chicago police officer John Dalcason testified before the grand jury. In response to the assistant State's Attorney's questions, the officer testified that on November 21, 2011, he saw the 17-year-old respondent with a handgun, that a 17-year-old could not lawfully possess a handgun and that the respondent would not be 21 for 4 more years.

---

[1]Illinois Supreme Court Rule 660A was adopted on March 15, 2013 and was effective May 1, 2013. This rule setting forth the expedited procedures applicable to appeals in delinquent minors' cases does not apply to this appeal. See Ill. S. Ct. R. 660A(h) (eff. May 1, 2013) (the rule is applicable to notices of appeal filed after the effective date of the rule). The respondent's notice of appeal was filed on June 21, 2012.

The grand jury returned an indictment charging the respondent with: one count of unlawful use of a weapon (720 ILCS 5/24-1(a)(10) (West 2010)); one count of possessing a firearm with a defaced identification mark (720 ILCS 5/24-5(b) (West 2010)); and aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (a)(3)(C) (West 2010)). The respondent remained in custody.

¶ 5        On January 18, 2012, the parties appeared before Circuit Court Judge Carol M. Howard. Defense counsel made an oral motion to dismiss the charges for lack of jurisdiction. Defense counsel represented to Judge Howard that the respondent was 16 years old. As proof, counsel presented the judge with a noncertified birth certificate stating that the respondent was born on September 4, 1995. The State requested that a certified copy of the birth certificate be presented. Judge Howard expressed concern with the prospect of a 16-year-old remaining in adult custody until the certified copy of the birth certificate could be presented and placed the respondent on electronic home monitoring. The judge ordered defense counsel to file a written motion to dismiss. The case was continued to January 27, 2012.

¶ 6        On January 27, 2012, respondent filed his written motion to dismiss the charges with prejudice and presented a certified birth certificate showing that he was 16 years old. The prosecutor informed Judge Howard that the State was going to nol-pros the case and that a police officer was present to take the respondent into custody as a juvenile on the weapons charges. Defense counsel objected, arguing that the case should be dismissed with prejudice because the indictment was procured through perjured testimony. Judge Howard declined to hold an evidentiary hearing as to the motion to dismiss and allowed the State's motion to nol-pros the charges.

¶ 7        On January 30, 2012, the parties appeared before Circuit Court Judge Stuart Lubin in juvenile court for a probable cause and detention hearing. The State filed a petition for adjudication of wardship, arising out of the respondent's November 21, 2011, arrest. The petition alleged against the respondent, one count of possessing a firearm with a defaced identification mark (720 ILCS 5/24-5(b) (West 2010)); four counts of aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A), (a)(3)(C), (a)(3)(D), (a)(3)(I) (West 2010)); two counts of unlawful possession of firearms (720 ILCS 5/24-3.1(a)(1), (2) (West 2010)); and possession of firearm ammunition without a firearm owner's identification (FOID) card (430 ILCS 65/2(a)(2) (West 2010)).

¶ 8        Defense counsel filed a motion to release the respondent from custody and dismiss with prejudice the charges contained in the delinquency petition, alleging that Officer Dalcason perjured himself when he testified before the grand jury that the respondent was 17 years old. Based on a previous arrest of the respondent listed in his juvenile history, Judge Lubin found the State knew or should have known the respondent's correct birth date but the officer did not intentionally lie to the grand jury. Judge Lubin denied the motion to dismiss but released the respondent to the custody of his mother because he had not received a hearing within 40 hours as required by section 5-415 of the Juvenile Court Act of 1987 (705 ILCS 405/5-415 (West 2010)). The judge granted defense counsel time to present case law on whether a dismissal with prejudice was required even if the false testimony was a mistake rather than intentional. On March 22, 2012, the respondent filed a pleading captioned "MOTION TO RECONSIDER DISMISSAL OF CHARGES WITH PREJUDICE OR IN THE ALTERNATIVE STAY PROCEEDINGS PENDING APPEAL."

¶ 9    On April 25, 2012, the parties appeared for an adjudicatory hearing on the delinquency petition and a hearing on the respondent's motion to reconsider the denial of his motion to dismiss the charges with prejudice.[2] Judge Lubin declined to hold an evidentiary hearing limiting the proceedings on the motion to dismiss argument. Defense counsel maintained that at the time of his arrest on November 21, 2011, the respondent gave the police his correct birth date of September 4, 1995, but the police did not believe him. Before the grand jury, Officer Dalcason testified falsely that the respondent was 17 years old. Defense counsel further maintained that Judge Lubin's finding that the police knew or should have known the respondent's correct age necessitated an evidentiary hearing to determine whether the false testimony was intentional or a mistake. Defense counsel further maintained that, even if the false testimony was unintentional, dismissal with prejudice was still the proper remedy.

¶ 10    The State responded that the adult charges against the respondent had been dismissed. The State pointed out that respondent had no identification on him at the time of his arrest and maintained that the respondent gave Officer Dalcason the incorrect birth date.

¶ 11    Assuming for the purpose of the motion that Officer Dalcason committed perjury, Judge Lubin noted that the remedy was the dismissal of the indictment and that the indictment against the respondent had been dismissed. The judge pointed out that, for an indictment to be dismissed with prejudice, the perjury must go to a fact necessary to establish probable cause. In this case, the respondent's age was not necessary to establish probable cause. Judge Lubin denied the respondent's motion. The case proceeded to the adjudication hearing.

¶ 12    Officer Dalcason testified that on November 21, 2011, he was working as part of a bait car team. The team placed vehicles owned by the Chicago police department in high-theft areas and conducted surveillance of the vehicles. If the vehicle was taken, the engine function could be terminated and the doors locked, enabling the team to place the offender in custody.

¶ 13    Officer Dalcason further testified that on November 21, 2011, he was seated in an unmarked car parked on the north side of Evergreen Avenue, facing west. A vehicle pulled up in front of the unmarked police vehicle. An individual exited from the driver's side and began crossing the street. Half way across the street, the individual looked in the direction of the unmarked police vehicle and immediately reached into his jacket pocket and removed an object. The individual crossed to the south side of the street and walked around a large green sport utility vehicle (SUV) to the rear of the green SUV. Officer Dalcason observed the individual crouch down and reach around the left rear tire and place a weapon underneath and to the right of the left rear tire of the green SUV. The officer identified the respondent as the individual who placed the handgun under the green SUV.

¶ 14    Officer Dalcason exited the unmarked police vehicle and detained the respondent. When the other team members arrived, the officer recovered a Walther[3] semiautomatic pistol, approximately five to six inches long, from underneath the left rear tire of the green SUV. The pistol was loaded with 15 rounds of ammunition. The officer could not read the serial numbers

_____

[2]There is no dispute that Judge Lubin dismissed the respondent's motion to dismiss the charges with prejudice on January 30, 2012, and that it was a motion for reconsideration of that order which was before Judge Lubin on April 25, 2012. However, during argument on the motion to reconsider, both Judge Lubin and defense counsel referred to the motion for reconsideration as a motion to dismiss.

[3]Also spelled "Walter" in the record.

- 4 -

on the pistol as they had been partially defaced. Judge Lubin overruled the respondent's objection to the failure of the State to produce the pistol. When Officer Dalcason asked the respondent how old he was, the respondent told him he was 17 years old. The respondent admitted that he did not have a FOID card. The respondent was not engaged in any hunting activities at the time he was detained.

¶ 15   Officer Dalcason acknowledged that he lost sight of the respondent when he walked around the green SUV. The officer explained that Evergreen Avenue was a one-way street, and the left rear tire of the SUV was closest to him. From his location, Officer Dalcason had a clear view of the weapon and the respondent. The officer explained that where the serial number should have been on the weapon recovered, the number was scratched off.

¶ 16   Admitted into evidence was a certified copy of the respondent's admission of guilt to one count of residential burglary and a certified copy of the respondent's birth certificate. The State rested, and the respondent rested without putting on any evidence.

¶ 17   Judge Lubin found the respondent guilty of all but one of the offenses charged in the delinquency petition.[4] Judge Lubin ordered the preparation of a social history and continued the case for a dispositional hearing.

¶ 18   At the May 23, 2012, dispositional hearing, the respondent's probation officer reported to Judge Lubin that the respondent had a total of 16 arrests, 4 station adjustments, 4 warrants, 9 court referrals and 3 findings of delinquency. A previous disposition of supervision was terminated unsatisfactorily due to four violations. The respondent had been found guilty of attempted residential burglary and served 28 days, with a stay of the mittimus; the finding of guilt stood and the case was closed.

¶ 19   The probation officer further related that the respondent was a member of the Latin Kings and smoked marijuana daily. He had received inpatient drug treatment services. The respondent had not attended school since 2010 and had a history of noncompliance with the orders of the juvenile court. The probation officer recommended that the respondent be committed to the Department of Juvenile Justice. The State agreed with the probation officer's sentencing recommendation.

¶ 20   Defense counsel objected to the use of the social history investigation report. Counsel pointed out that he had just received a copy of the report, and it appeared that the probation department had elicited incriminating statements from the respondent regarding the November 21, 2011, incident. Judge Lubin stated that he would consider only the facts brought out on cross-examination of the officer at the hearing.

¶ 21   Defense counsel explained that the respondent's father had died of cancer, but the respondent had the support of his mother. The respondent suffered from a learning disability and was emotionally disturbed. Counsel argued that the least restrictive alternative disposition for the respondent was probation and enrollment in a community-based residential program. Personnel from Abraxis and Gateway indicated they would accept the respondent. According to a 2005 transcript from the respondent's stay at Abraxis, his grades improved from F's to A's and B's. Another community-based alternative was Holistic Legal Services. The respondent would receive educational services, mentoring, after school programs and job training, and

---

[4]Judge Lubin found the respondent not guilty on count V–possession of a weapon by a minor previously adjudicated a delinquent based on the offense of criminal trespass to a vehicle. 720 ILCS 5/24-3.1(a)(2) (West 2010).

monitoring. Defense counsel disputed whether the respondent had ever received probation and the attendant court-ordered services. The respondent's stay at Abraxis was a voluntary admission.

¶ 22 Judge Lubin concluded that the least restrictive disposition alternative was to commit the respondent to the Department of Juvenile Justice. The judge found that the respondent needed to be in a place where he could receive services but would not have the ability to ignore them or run away. Judge Lubin determined that commitment was in the best interest of the respondent and that of society. The commitment order provided that the committing charge was aggravated use of a weapon (720 ILCS 5/24-1.6(a)(1) (West 2012)). The order did not specify which count. The judge denied the respondent's oral motion for a new trial.

¶ 23 On June 21, 2012, the respondent filed a motion to reconsider the sentence and a supplemental motion to reconsider the commitment disposition. Also on June 21, he filed a notice of appeal from the May 23, 2012, order, a motion for a declaration of indigency, a waiver of fees, and the appointment of counsel on appeal.

¶ 24                                                   ANALYSIS
¶ 25                                          I. Appellate Jurisdiction

¶ 26 In its responsive brief, the State maintains that this court's jurisdiction is lacking because the June 21, 2012 notice of appeal was filed prior to a ruling on the respondent's posttrial motion to reconsider sentence. While we do not have the benefit of a reply brief from the respondent addressing the challenge to jurisdiction, we disagree with the State.

¶ 27 Unless specifically provided, appeals from final judgments in delinquent minor proceedings are governed by the rules applicable to criminal cases. Ill. S. Ct. R. 660 (eff. Oct. 1, 2001). Illinois Supreme Court Rule 606 (eff. Dec. 1, 1999) governs the perfection of appeals in criminal cases. Rule 606(b) provides in pertinent part as follows:

> "When a timely posttrial or postsentencing motion directed against the judgment has been filed by counsel *** any notice of appeal filed before the entry of the order disposing of all pending postjudgment motions shall have no effect and shall be stricken by the trial court. *** This rule applies whether the timely postjudgment motion was filed before or after the date on which the notice of appeal was filed. A new notice of appeal must be filed within 30 days following the entry of the order disposing of all timely postjudgment motions." Ill. S. Ct. R. 606(b) (eff. Dec. 1, 1999).

¶ 28 Following the trial court's admonishments to the respondent as to his appeal rights, the following colloquy took place:

> "MR. NELLIS [defense counsel]: Just for preservation of appeal, on the record I would be asking for a new trial.
>
> THE COURT: That's denied.
>
> MR. NELLIS: Okay. Can I make a proffer as to why?
>
> THE COURT: Sure."

¶ 29 Defense counsel argued that the trial court erred when it failed to dismiss the case with prejudice and that the State failed to prove the respondent guilty beyond a reasonable doubt. He requested that the court enter a finding of not guilty or order a new trial. The trial court denied the motion. Upon denial of the motion, defense counsel did not indicate that he would

be filing any written motions, either supplementing his oral motion for a new trial or requesting resentencing prior to filing a notice of appeal.

¶ 30    "Rule 606(b) contemplates the filing of only one postjudgment motion directed against the final judgment–whether it be the conviction or the sentence or both, but the rule does not authorize successive and repetitious motions raising issues that were raised earlier or could have been raised earlier and thereby extend the time for appeal." *People v. Miraglia*, 323 Ill. App. 3d 199, 205 (2001). The rule only requires that a postjudgment motion be "(1) timely [citation], (2) directed against the judgment [citation], and (3) the first such motion [citation]." *People v. Green*, 375 Ill. App. 3d 1049, 1053 (2007).

¶ 31    The State relies on *People v. Willoughby*, 362 Ill. App. 3d 480 (2005). In *Willoughby*, the defendant's motion for a new trial was filed on May 19, 1994, but was still pending when the notice of appeal was filed on June 10, 1994. Because the motion for a new trial was timely filed, the notice of appeal was premature, and the appellate court lacked jurisdiction of the appeal. *Willoughby*, 362 Ill. App. 3d at 482. *Willoughby* is distinguishable from the present case because in *Willoughby*, only one postjudgment motion was filed.

¶ 32    In the present case, defense counsel could have raised the dispositional error at the May 23, 2012, proceeding. Because the June 21, 2012, motion for reconsideration of sentencing was the second motion directed against the judgment, it did not invoke Rule 606(b). Thus, there was no requirement that the June 21, 2012, notice of appeal be stricken. The respondent's notice of appeal was timely since it was filed within 30 days of the denial of his oral posttrial motion. We conclude that this court has jurisdiction of the respondent's appeal.

¶ 33                    II. Denial of Due Process–Issues I, II and III

¶ 34    The respondent contends his indictment as an adult violated his due process rights, and the resulting prejudice to him required that the charges against him be dismissed with prejudice. The respondent maintains that Judge Howard erred when she allowed the State to nol-pros the indictment without an evidentiary hearing and that Judge Lubin erred when he denied the motion to dismiss the delinquency petition with prejudice without an evidentiary hearing. The respondent argues an evidentiary hearing was necessary to determine if the grand jury was intentionally misled as to the respondent's true age by the State and/or the police.

¶ 35                            A. Standard of Review

¶ 36    " 'The standard of review for determining whether an individual's constitutional rights have been violated is *de novo*.' " *People v. Cotton*, 393 Ill. App. 3d 237, 251 (2009) (quoting *People v. Burns*, 209 Ill. 2d 551, 560 (2004)).

¶ 37                                B. Discussion

¶ 38    A trial court has inherent authority to dismiss criminal charges where there has been a clear denial of due process that prejudices the defendant. *People v. Hunter*, 298 Ill. App. 3d 126, 130 (1998). To dismiss an indictment, "the denial of due process must be unequivocally clear [citation], and the prejudice must be actual and substantial [citation]." *People v. Oliver*, 368 Ill. App. 3d 690, 694-95 (2006).

¶ 39    In *Oliver*, the defendant was charged by indictment with the offense of unlawful possession of a controlled substance with intent to deliver based on police officer Cress's

grand jury testimony. Officer Cress testified that he witnessed the defendant making hand-to-hand transactions, which together with the amount of cocaine found in his possession, led the officer to believe the cocaine was for delivery purposes. However, Officer Cress's observations of the defendant were taken from the report of Officer Bell, who conducted the surveillance of the defendant. Officer Bell testified at a suppression hearing that he did not see any drugs exchanged.

¶ 40    The reviewing court in *Oliver* upheld the trial court's dismissal of the indictment with prejudice. The court held that "the State's presentation of deceptive evidence denied defendant due process, regardless whether the deception was intentional." *Oliver*, 368 Ill. App. 3d at 696. Turning to the issue of prejudice, the court observed that "a due process violation consisting of prosecutorial misconduct before a grand jury is actually and substantially prejudicial only if without it the grand jury would not have indicted the defendant." *Oliver*, 368 Ill. App. 3d at 696-97. Where the evidence was strong enough that the grand jury would have indicted the defendant despite the misconduct, the misconduct was not prejudicial. *Oliver*, 368 Ill. App. 3d at 697. Where the evidence was so weak that the misconduct induced the grand jury to indict, the defendant has shown he was prejudiced. *Oliver*, 368 Ill. App. 3d at 697.

¶ 41    The court in *Oliver* determined that by itself the hearsay nature of Officer Cress's testimony was insufficient to deter the grand jury from finding probable cause to indict the defendant. However, not only was the testimony hearsay, but Officer Cress testified that it was his own observations of the defendant that led him to conclude that the defendant was delivering drugs. However, Officer Bell, who had personally observed the defendant, could not determine that a drug delivery was taking place. The court concluded that in the absence of Officer Cress's mischaracterization of the observations of Officer Bell, the grand jury would not have found probable cause to indict the defendant. Therefore, the due process violation was actually and substantially prejudicial. *Oliver*, 368 Ill. App. 3d at 697-98.

¶ 42    In *People v. Reimer*, 2012 IL App (1st) 101253, this court reversed a trial court order denying the defendant's motion to dismiss an indictment with prejudice. The grand jury indicted the defendant for violations of the Home Repair Fraud Act (815 ILCS 515/3(a)(1) (West 2008)). The defendant alleged that the indictment resulted from prosecutorial misconduct in that the prosecutor misstated the law as to the element of intent to the grand jury. In rejecting the State's argument that the defendant did not suffer actual and substantial prejudice because there was no showing that the State intentionally misled the grand jury, this court agreed with the majority in *Oliver*,[5] stating as follows:

> "The assistant State's Attorney's actions may or may not have been inadvertent; however, it is still the role of the prosecutor to present the 'pertinent' law to the grand jury. [Citation.] Subjecting a defendant to criminal prosecution in this case based on the State's incorrect presentation of the law to the grand jury deprived him of his right to due process, whether the assistant State's Attorney's actions were intentional or not." *Reimer*, 2012 IL App (1st) 101253, ¶ 33 (quoting *People v. DiVincenzo*, 183 Ill. 2d 239, 254 (1998)).

---

[5]Presiding Justice Grometer filed a special concurrence in *Oliver*, agreeing with the result but on the basis that the State intentionally misled the grand jury. *Oliver*, 368 Ill. App. 3d at 702 (Grometer, P.J., specially concurring).

¶ 43    In light of the decision in *Reimer*, there was no need for Judge Howard or Judge Lubin to hold evidentiary hearings since the intentional or unintentional nature of the perjury was not determinative of whether the violation of the respondent's due process rights resulted in substantial and actual prejudice to him. Rather, the relevant question was whether "the deception was crucial to the determination of probable cause." *Oliver*, 368 Ill. App. 3d at 699. Even if Officer Dalcason deliberately misled the grand jury as to the respondent's age, the respondent's age was unrelated to the finding of probable cause. While the respondent would not have been indicted had his true age been known, the failure to indict would not have been based on the lack of probable cause as to the commission of the offenses but because of his status as a minor. See 705 ILCS 405/5-130(9) (West 2010) (with the agreement of his attorney, a minor, 13 years old or older and charged with act constituting a crime under Illinois law, may request criminal prosecution and that the delinquency petition be dismissed).

¶ 44    We conclude that the failure to hold an evidentiary hearing to determine whether Officer Dalcason's grand jury testimony that the respondent was 17 years old was unintentional or willful perjury was not error. Even if the false information conveyed to the grand jury was the result of willful perjury, the denials of the respondent's motions to dismiss the indictment and the delinquency petition with prejudice were not error since the respondent's age was not a factor in the determination of probable cause by the grand jury.

¶ 45                         III. Reasonable Doubt-Issues IV and V

¶ 46    The respondent contends that the State failed to prove him guilty of possession of a firearm or defacing the identification marks of a firearm beyond a reasonable doubt.

¶ 47                         A. Standard of Review

¶ 48    " 'When a court is faced with a challenge to the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Span*, 2011 IL App (1st) 083037, ¶ 28 (quoting *People v. Moore*, 375 Ill. App. 3d 234, 238 (2007)). As the reviewing court, we will not substitute our judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses. We will reverse a criminal conviction only if the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt as to the defendant's guilt. *Span*, 2011 IL App (1st) 083037, ¶ 28.

¶ 49                         B. Discussion

¶ 50                         1. *Possession of a Firearm*

¶ 51    The respondent was adjudicated a delinquent minor based on the trial court's finding that he was in possession of a firearm. The respondent maintains that the State failed to prove that he was in actual or constructive possession of a firearm. He points out that Officer Dalcason admitted he could not see the object the respondent removed from his jacket pocket. He argues that Officer Dalcason's testimony that he saw the respondent place a firearm in front of the left rear tire of the green SUV lacked credibility because the respondent could just as easily have placed it there without getting on the ground and reaching around the back of the tire to put the weapon in front of the left rear tire.

¶ 52 Officer Dalcason's testimony established that the respondent had actual possession of the Walther pistol recovered from under the green SUV. The officer was able to view the green SUV from his surveillance location. While he lost sight of the respondent as the respondent circled the green SUV, the officer testified that from his location, he observed the respondent place the pistol in front of the left rear tire, from where it was subsequently recovered. The respondent's challenge to Officer Dalcason's credibility is purely speculative. See *People v. Adams*, 394 Ill. App. 3d 217, 235 (2009) (rejecting the defendant's challenges to the evidence where they amounted to no more than speculation).

¶ 53 We conclude that the evidence was sufficient to support the trial court's finding that the respondent had actual possession of the Walther pistol beyond a reasonable doubt.

¶ 54 2. *Defacing Identification Marks of a Firearm*

¶ 55 The respondent contends that the evidence was insufficient to convict him of possessing a firearm on which the identification marks had been defaced because the State failed to produce the Walter pistol at the hearing. He further contends that he was prejudiced because he was unable to challenge Officer Dalcason's description of the condition of the serial number.[6]

¶ 56 In the context of a prosecution for unlawful use of weapons, this court has held that the failure of the State to introduce a weapon at trial does not impair an officer's credibility or raise a reasonable doubt of a defendant's guilt. *People v. Delk*, 96 Ill. App. 3d 891, 903 (1981). In *Delk*, the weapon had been destroyed prior to trial. While expressing its disapproval of the destruction of the weapon, based on the police officer's experience, we held that the trial court could accept his testimony describing the object he seized from the defendant and find that it was a deadly weapon. *Delk*, 96 Ill. App. 3d at 903.

¶ 57 Officer Dalcason had nine years' experience as a Chicago police officer. At the hearing, he provided a detailed description of the weapon recovered from under the green SUV. Officer Dalcason further observed that the serial number on the pistol was defaced. While he did not recall the two numbers of the serial number which remained legible, he testified that he could not read the rest of the pistol's serial number because it had been scratched off.

¶ 58 Despite the absence of the Walther pistol at the hearing, Officer Dalcason's testimony was sufficient for Judge Lubin to find that the respondent possessed a defaced firearm. In light of the respondent's steadfast contention that he never possessed the pistol, failure to produce the pistol at trial did not prejudice the respondent.

We conclude that the respondent was found guilty of possessing a firearm on which the identification marks had been defaced beyond a reasonable doubt.

¶ 59 IV. One-Act, One-Crime Doctrine–Issue VI

¶ 60 The respondent contends that the multiple findings of guilt in this case violate the one-act, one-crime doctrine. The respondent maintains that all seven of the findings were based on the single act of possession of the Walther pistol. Therefore, he asserts that six of the seven

---

[6]The respondent was charged with violating subsection (b) of section 24-5 of the Criminal Code of 1961 (the Code). Subsection (b) provides that "[a] person who possesses any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated commits a Class 3 felony." 720 ILCS 5/24-5(b) (West 2010).

findings of guilt must be vacated.

¶ 61                               A. Standard of Review

¶ 62      Whether a conviction should be vacated under the one-act, one crime doctrine is a question of law which the court reviews *de novo*. *Span*, 2011 IL App (1st) 083037, ¶¶ 77-79.

¶ 63                                  B. Discussion

¶ 64      Initially, we note that the respondent did not raise this issue in the trial court. While a minor is not required to file a postadjudication motion, he or she must object at trial to preserve a claimed error for appeal purposes. *In re Samantha V.*, 234 Ill. 2d 359, 368 (2009). We may review this issue only if the plain-error exception to the forfeiture rule applies in this case. *Samantha V.*, 234 Ill. 2d at 368. The first step in a plain-error analysis is to determine if any error occurred. *Samantha V.*, 234 Ill. 2d at 368.

¶ 65      Multiple convictions are improper where they are based on precisely the same act. *Span*, 2011 IL App (1st) 083037, ¶ 83. In *People v. Quinones*, 362 Ill. App. 3d 385 (2005), the defendant was convicted of two counts of aggravated unlawful use of weapons, one based on his possession of an uncased, loaded and accessible firearm and one based on his possession of the firearm without a valid FOID card. In reversing one of the convictions, this court held that the two convictions violated the one-act, one-crime doctrine since each was based on the defendant's act of possessing the firearm. *Quinones*, 362 Ill. App. 3d at 397.

¶ 66      In *Samantha V.*, the minor was adjudicated a delinquent minor on two charges of aggravated battery based on a single act of battering the victim. In its plain-error analysis, the supreme court first determined that the one-act, one-crime doctrine applied to juvenile proceedings. *Samantha V.*, 234 Ill. 2d at 375. The court then determined that the trial court violated the one-act, one-crime doctrine when it found the minor guilty on both charges and failed to merge the counts or otherwise indicate on the record that the minor's adjudication of delinquency was based on only one count of aggravated battery. *Samantha V.*, 234 Ill. 2d at 378. Having concluded that error occurred, the court held that a violation of the one-act, one-crime doctrine affected the integrity of the judicial process and therefore satisfied the second prong of the plain-error test. *Samantha V.*, 234 Ill. 2d at 378-79. The case was remanded to the circuit court for a determination as to which of the aggravated battery charges was the more serious offense and to vacate the delinquency finding on the less serious offense. *Samantha V.*, 234 Ill. 2d at 379-80.

¶ 67      Judge Lubin found the respondent guilty on seven of the eight counts in the delinquency petition. Counts I, II, III, IV, VI and VII were all based on the respondent's possession of the Walther pistol.

¶ 68      At the dispositional hearing, the judge did not state that the counts were merged, but stated as follows:

> "So on this case *** there's a finding of best interest and wardship. There is also a finding of inability and best interest to commit to the Department of Juvenile Justice. Aggravated unlawful use of a weapon is a Class 4 felony. The maximum adult sentence would be three years in the penitentiary."

The commitment order stated that the committing charge was aggravated unlawful use of a weapon, in violation of section 24-1(a)(1), a Class 4 felony. However, the respondent was

found guilty on four counts of aggravated unlawful use of a firearm, and the commitment order did not indicate on which count the commitment order was based. In addition, one of the counts of aggravated unlawful use of a weapon must be vacated under our supreme court's decision in *People v. Aguilar*, 2013 IL 112116.[7] Since the record does not reflect that a single adjudication of delinquency was entered on a viable count, there was a violation of the one-act, one-crime doctrine, satisfying the second prong of the plain-error test.

¶ 69 While counts I, II, III, IV, VI and VII were based on the single act of the respondent's possession of the Walther pistol, count VIII, the possession of firearms ammunition, requires further discussion. The respondent was charged under section 2(a)(2) of the Firearm Owners Identification Card Act (430 ILCS 65/2 (West 2010)) (the FOID card Act), which provides as follows:

> "No person may acquire or possess firearm ammunition within this state without having in his or her possession a Firearm Owner's Identification Card previously issued by the Department of State Police under the provisions of this Act." 430 ILCS 65/2(a)(2) (West 2010).

¶ 70 We disagree with the respondent that his conviction for possession of ammunition without a FOID card violates the one-act, one-crime doctrine. In *Samantha V.*, the court examined the charging document to determine if the State's intent was to prosecute the minor for multiple offenses. While each blow could have supported a separate finding of guilt, the counts did not differentiate between the separate blows inflicted on the victim by the minor. Since the charging document did not indicate the State's intent to prosecute the minor for multiple offenses, the two aggravated battery convictions violated the one-act, one-crime doctrine. *Samantha V.*, 234 Ill. 2d at 378.

¶ 71 In contrast, the respondent was not charged with possession of ammunition based on his possession of the loaded Walther pistol. The respondent was charged only with the unlawful possession of the ammunition without a FOID card.

¶ 72 We note that in *People v. Carter*, 213 Ill. 2d 295 (2004), our supreme court held that section 24-1.1(a) of the Criminal Code of 1961 (the Code) (720 ILCS 5/24-1.1(a) (West 2006)) did not support the defendant's conviction for simultaneous possession of a firearm and ammunition. Section 24-1.1(a) prohibited a felon from " 'knowingly possess[ing] *** any firearm or any firearm ammunition.' " (Emphasis omitted.) *Carter*, 213 Ill. 2d at 301 (quoting 720 ILCS 5/24-1.1(a) (West 1996)). The court determined that the "use of the term 'any' "did not "adequately define the 'allowable unit of prosecution.' " The court found the statute ambiguous and therefore must be construed in favor of the defendant. *Carter*, 213 Ill. 2d at 302. Following the decision in *Carter*, the legislature amended section 24-1.1 to allow convictions for both aggravated unlawful possession of a firearm by a felon and possession of the ammunition inside the firearm. See 720 ILCS 5/24-1.1(e) (West 2010) ("The possession of each firearm or firearm ammunition in violation of this Section constitutes a single and separate violation."); see also *People v. Anthony*, 2011 IL App (1st) 091528-B, ¶ 16.

¶ 73 We find the analysis in *People v. Sotelo*, 2012 IL App (2d) 101046, instructive. In *Sotelo*, the defendant was charged with three counts of unlawful possession of firearms without a FOID card in violation of section 2(a)(1) of the FOID Card Act and one count of unlawful possession of ammunition without a FOID card in violation of section 2(a)(2) of the FOID

---

[7]See discussion *infra* ¶¶ 80-81.

Card Act. 430 ILCS 65/2(a)(1), (a)(2) (West 2010). The trial court found the defendant guilty on all counts based on evidence that he possessed three different firearms and a box of ammunition without a FOID card. On appeal, the reviewing court held that the possession of multiple firearms without a FOID card supported only one conviction. However, a separate conviction based on the possession of the ammunition without a FOID card was valid. *Sotelo*, 2012 IL App (2d) 101046, ¶ 1.

¶ 74 The reviewing court determined that the two convictions did not violate the one-act, one-crime doctrine. Although the singular act of failing to possess a FOID card could not sustain multiple convictions of an offense comprised only of failing to possess a FOID card, failing to possess the card may serve as a common element of multiple offenses that include additional physical acts, such as possession of different firearms or firearm ammunition, as elements. *Sotelo*, 2012 IL App (2d) 101046, ¶ 3. The court then considered whether multiple convictions were permissible for each weapon and ammunition found in the defendant's possession, stating as follows:

> "Subsection (a)(1) of section 2 of the FOID Card Act prohibits possession of '*any* firearm, stun gun, or taser.' [Citation.] Under *Carter*, possession of multiple firearms without a FOID card will support only a single conviction. However, *Carter* is distinguishable with respect to possession of ammunition. In the statute in *Carter*, firearms and firearm ammunition appeared in the same list of proscribed items, and both are prefaced with the word 'any.' The statute at issue here is structured differently. Possession of firearms and ammunition is proscribed in separate subsections, and the word 'any' prefaces firearms, but not firearm ammunition. Presumably, if the General Assembly had intended simultaneous possession of firearms and ammunition to constitute a single unit of prosecution, it would have placed the items on a single list, as it did in the statute penalizing the possession of weapons and ammunition by felons." (Emphasis in original.) *Sotelo*, 2012 IL App (2d) 101046, ¶ 10.

¶ 75 The court in *Sotelo* determined that section 2(a) of the FOID Card Act was free from the ambiguity that dictated the result in *Carter*. *Sotelo*, 2012 IL App (2d) 101046, ¶ 12. While in *Sotelo*, the ammunition was in a separate box, we find the court's analysis applicable to the present case where the ammunition is inside the firearm. The plain, unambiguous language of the Act allows separate convictions where the defendant is in simultaneous possession of a firearm and ammunition, and we have no basis for limiting its application where the ammunition is contained in a firearm.

¶ 76 We conclude that an adjudication of delinquency on count VIII–possessing ammunition without a FOID card in violation of the FOID Card Act–did not violate the one-act, one-crime doctrine since the finding was not based on his possession of the Walther pistol but on his possession of the ammunition. However, because counts I, II, III, IV, VI and VII are based on a single possession of the Walther pistol, an entry of more than one adjudication of delinquency on these counts violated the one-act, one-crime doctrine.

¶ 77                              V. Disposition–Issues VII and VIII

¶ 78 The respondent contends that Judge Lubin erred when he proceeded to the dispositional hearing even though the social investigation report was untimely, and in finding that the Department of Juvenile Justice was the least restrictive alternative disposition. We do not reach the respondent's issues. In light of the necessity of vacating several of the guilty findings

under the one-act, one-crime doctrine, and the impact of the supreme court's decision in *Aguilar*, this case must be remanded to the trial court for further proceedings. The following discussion is set forth to provide guidance to the trial court on remand.

¶ 79    Under counts II, III, IV, and VII, the respondent was found guilty of aggravated unlawful use of weapons. In *Aguilar*, the supreme court recognized that the right to possess and use a firearm for self-defense outside of the home was not unlimited and was subject to meaningful regulation. *Aguilar*, 2013 IL 112116, ¶ 21. The court held that the second amendment protections did not extend to minors. *Aguilar*, 2013 IL 112116, ¶ 27 ("the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection"). The court upheld the 17-year-old defendant's conviction for possession by a person under 18 years of age of a firearm of a size which may be concealed on his person (720 ILCS 5/24-3.1(a)(1) (West 2012)). *Aguilar*, 2013 IL 112116, ¶ 28.

¶ 80    The State concedes that Judge Lubin's finding on count II that the respondent was guilty of possessing a firearm while not on his own land or in his abode or in his place of business, cannot stand. *Aguilar*, 2013 IL 112116, ¶ 1 (Class 4 form of section 24-1.6(a)(1), (a)(3)(A) of the Code violates the right to keep and bear arms, as guaranteed by the second amendment to the United States Constitution (U.S. Const., amend. II)). The State argues that the remaining three counts, III, IV and VII remain viable under *Aguilar*. We agree.

¶ 81    On count III, the respondent was found guilty of aggravated unlawful use of weapons for failing to have a FOID card. Pursuant to *Aguilar*, this court upheld a conviction for aggravated unlawful use of weapons where the aggravating factor was failure to possess a FOID card (720 ILCS 5/24-1.6(a)(2) (West 2012)). See *People v. Henderson*, 2013 IL App (1st) 113294. Therefore, the adjudication of delinquency on count III stands.

¶ 82    On count IV, the respondent was found guilty of aggravated unlawful use of a weapon by a person under the age of 21, not engaged in lawful activities under the Wildlife Code (520 ILCS 5/1.1 *et seq.* (West 2012)). The respondent was 16 years old and not engaged in any lawful activities under the Wildlife Code. Under the analysis in *Aguilar*, the adjudication of delinquency on count IV stands.

¶ 83    On count VII, the respondent was found guilty of aggravated unlawful use of a weapon based on his previous adjudication as a delinquent minor for an offense which if committed by an adult would be a felony. In *People v. Burns*, 2013 IL App (1st) 120929, *appeal allowed*, No. 117387 (Ill. May 28, 2014) (table), this court held that possession of firearms by a felon is conduct that falls outside of the protections of the second amendment. *Burns*, 2013 IL App (1st) 120929, ¶ 27; see *Aguilar*, 2013 IL 112116, ¶ 26. Therefore, under *Aguilar* and *Burns*, the adjudication of delinquency on count VII stands.

¶ 84    In summary, count II must be vacated under *Aguilar*. The remaining viable counts are I, III, IV, VI, VII, and VIII. The offenses charged in counts I, III, IV, VI and VII were based on possession of the Walther pistol. Under the one-act, one-count doctrine, the respondent should be sentenced on the most serious offense and the less serious offenses vacated. *Samantha V.*, 234 Ill. 2d at 379. To determine which is the most serious offense, the court looks to the punishments prescribed for the offenses; the greater the punishment, the more serious the offense. *Samantha V.*, 234 Ill. 2d at 379 (common sense dictates that the legislature would prescribe the greater punishment for the offense it deems the more serious).

¶ 85    We vacate the adjudication of delinquency on count II. We remand this case to the trial court for the entry of a single adjudication of delinquency based on count VIII and on the count

- 14 -

which the court determines to be the most serious of the offenses charged in counts I, III, IV, VI, and VII. The court shall then vacate the remaining four counts.

¶ 86 Finally, we grant the State's request that this case be remanded for a new dispositional hearing wherein the respondent's objections to the social history report may be addressed. On remand, we instruct the court to hold a new dispositional hearing in order to address the respondent's claims of error in the social history report and to determine if a new disposition should be imposed.

¶ 87           CONCLUSION

¶ 88 The judgment of the circuit court is affirmed in part, vacated in part and remanded with directions.

¶ 89 Affirmed in part and vacated in part; cause remanded with directions.